IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 15, 2022

**JOHNATHAN ROBERT LEONARD v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Marshall County**
**Nos. 2018-CR-101-PC, 2015-CR-110    M. Wyatt Burk, Judge**

_____

**No. M2021-00535-CCA-R3-PC**

_____

The Petitioner, Johnathan Robert Leonard[1], sought post-conviction relief from his convictions of three counts of rape of a child, two counts of soliciting sexual exploitation of a minor, and one count of aggravated sexual battery, for which he received an effective ninety-six-year sentence. Relevant to this appeal, he alleged that counsel was ineffective because counsel failed to adequately meet and confer with him, preserve for appeal several issues related to prosecutorial misconduct during trial proceedings, and appeal his sentence. *See Johnathan Robert Leonard v. State*, No. M2018-01737-CCA-R3-PC, 2019 WL 5885085, at *1 (Tenn. Crim. App. Nov. 12, 2019), *perm. app. denied* (Tenn. Mar. 26, 2020). Following a hearing, the post-conviction court granted the Petitioner relief in the form of a delayed appeal regarding his claim that counsel was ineffective in failing to appeal his sentence, but this court reversed and remanded for adjudication of the Petitioner's remaining allegations. *Id.* at *9. On remand, the post-conviction court denied the Petitioner's remaining claims after a second evidentiary hearing. The Petitioner appeals, maintaining that counsel failed to adequately meet and confer with him and to preserve for appeal claims related to prosecutorial misconduct. We affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

L. Jeffery Payne, Lewisburg, Tennessee, for the appellant, Johnathan Robert Leonard.

_____

[1] We note that the Petitioner's name appears as "Johnathon" or "Jonathan" in various pleadings. We utilize the spelling of the Petitioner's name as it appeared in the indictment. *See Johnathan Robert Leonard v. State*, No. M2018-01737-CCA-R3-PC, 2019 WL 5885085, at *1 n.1 (Tenn. Crim. App. Nov. 12, 2019).

Herbert H. Slatery III, Attorney General and Reporter; Hannah-Catherine Lackey, Assistant Attorney General; Robert J. Carter, District Attorney General; and William Bottoms, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The evidence presented at trial established that the Petitioner sexually abused his girlfriend's two daughters, aged nine and seven, over a period of time. *State v. Johnathan Robert Leonard*, No. M2016-00269-CCA-R3-CD, 2017 WL 1455093, at *1 (Tenn. Crim. App. Apr. 24, 2017), *perm. app. denied* (Tenn. Aug. 16, 2017). The trial evidence showed that

[f]rom August 2013 to March 2014, the victims and their mother lived with the [Petitioner], and the [Petitioner] cared for the victims after school and on weekends while their mother was at work. On March 2, 2014, the victims disclosed the [Petitioner's] sexual abuse to their mother. The following day, the victims' mother contacted the police, and the victims were interviewed by detectives and underwent forensic examinations. The [Petitioner] was arrested based on the disclosures made by the victims. Detectives interviewed the [Petitioner] after he waived his rights, and he denied the allegations of sexual abuse.

At trial, the seven-year-old victim testified to numerous instances of sexual abuse by the [Petitioner], stating that the [Petitioner] made her touch his penis, pulled down his pants and told her what to do with his penis on multiple occasions, put his penis in her mouth, touched her "bottom" and vagina with his penis, and put his penis "in [her] bottom" during which she felt pain. The nine-year-old victim testified that the [Petitioner] showed his "private parts" to her, made her move her hand "up and down" his penis on more than one occasion, touched her "butt" with his penis, and pushed his penis "[i]n [her] butt," which caused her pain. She recalled that the [Petitioner] put lotion in her hand and made her rub the lotion on his penis, that the [Petitioner's] penis "would go straight," and that "clear, white stuff would come out." She also saw the [Petitioner] put his penis into the other victim's mouth. Both victims testified that the [Petitioner] showed them pornographic movies.

- 2 -

The [Petitioner] testified at trial and denied sexually abusing the victims or showing them pornographic movies. He stated that on the morning in which the victims made the disclosures, he and their mother had an argument during which the [Petitioner] told the victims' mother that he was leaving her. The [Petitioner] said that he had told the victims' mother that he was leaving her on a prior occasion and that she had threatened to "put him in jail."

*Johnathan Robert Leonard*, 2019 WL 5885085, at \*1 (citing *Johnathan Robert Leonard*, 2017 WL 1455093, at \*1-2).

The jury convicted the Petitioner of three counts of rape of a child, two counts of soliciting sexual exploitation of a minor, and one count of aggravated sexual battery. *Id.* (citing *Johnathan Robert Leonard*, 2017 WL 1455093, at \*2). The Petitioner was sentenced to thirty-two years for each conviction of rape of a child, ten years for aggravated sexual battery, and five years for each conviction of soliciting sexual exploitation of a minor. *Id.* The trial court ordered the Petitioner to serve his sentences for his convictions for rape of a child consecutively to each other but concurrently to his sentences for his other convictions, resulting in an effective sentence of ninety-six years. *Id.*

Among other issues not relevant to the present matter, the Petitioner claimed on direct appeal that the following sixteen comments made by the prosecutor during trial proceedings constituted reversible error:

1. [W]e're going to start this trial, and *we're going to have two little girls come in here and do the hardest thing they've ever done in their life*, I want to make sure that you know before we have to do that that you can be a fair and impartial jury. So take five seconds to look in your hearts, and if you can't, if you can't and you're not sure that you can be, raise up your hand if you can't be fair in this case today. (during voir dire)

2. *Now, how much bravery will it take, she's now eight, to come in here and tell you the things that happened to her as a six and seven year old girl, a little innocent girl* telling you about the horrible things that happened to her by her mom's boyfriend, a man she one time called dad? (during opening statement)

3. *These two little girls are probably going to feel like they're the ones on trial.* (during opening statement)

- 3 -

4. *You knew before you walked in this courtroom today that he gave—* [2] (during cross-examination of a defense witness)

5. *You're being evasive.* (during cross-examination of the [Petitioner])

6. And from the opportunity that I've had sitting down there, *I've told others on this panel that I always try to watch the jurors, see what they're doing. And every time I've looked over at y'all, I've been totally satisfied with the attention that you've given this case.* (during closing argument)

7. *We spent a lot of time yesterday, some time the day before, attempting to try a case against [the victims' mother].* I don't know, and for the purposes of this trial, I don't care about [the victims' mother]. I don't care whether she is a good mother or a bad mother, for purposes of this trial. *[The victims' mother] is not on trial.*

....

*Now, there is an old adage that goes around the courthouses of Tennessee. An adage goes something like this: If you are a defendant, and you look at the situation and the facts are against you, then you try to distract the jury away from the facts. So talk about the law. If you're a defendant, and the law is against you, then talk about the facts. If you are a defendant and the facts and the law are against you, then you talk about anything else, but get the jury looking the other way.* Don't be distracted. Look at the facts and look at the law in this case. (during closing argument)

8. *And then in the afternoon, she goes to get the children and brings them in to the police department.* And counsel asked, "Well"—well asked the children, "Did your mother talk to you in the car?" "Well, yeah." Well, we know generally where the relative lived is between the courthouse and [the apartment complex], just a few minutes drive. *Common sense, a 6 and 7 year old child, children, being educated that way over that short period of time, enough to say that, "His penis, when I saw it, was curvy."* We all know what she meant. *And then it was straight.* We all know what she meant. *And "White stuff came out of the end of it."* We all know what she meant. *"And he put it in my mouth. He put my hand on it."* (during closing argument)

---

[2] This comment was cut off by an objection from defense counsel. *See Johnathan Robert Leonard*, 2017 WL 1455093, at *4 n.6.

9. [*S*]*ometimes in a case like this, my job is to help children.* (during closing argument)

10. But there [were] *two things, that even somebody as hard-nosed as I am, that happened in the trial that bothered me, [c]an't help it. When [the seven-year-old victim] said, "[I]t went in my mouth," that tore me up. That tore me up.*

....

*One of the other things that tore me up in this trial is two simple words, "It hurt."* When they were talking about penetration, "It hurt." (during closing argument)

11. *I told you there were two things that really bothered me.* It wasn't with [the seven-year-old victim], the second thing. It was with [the nine-year-old victim]. *And I am going to admit something to you. This was done in the courtroom because I grabbed [General Wright] and told him—and I didn't know what the child would do, have her demonstrate. It tore me up. It was my fault.* But you folks needed to see. (during closing argument)

12. *And again, how much time did they have?* General Barnard focused on this. Did they have enough time to come up with grand scheme or grand story in a short drive, from somewhere in Lewisburg to the Lewisburg Police Department? (during rebuttal closing argument)

13. *But he's wanting it to go both ways. He's wanting to use a double-edged sword there, because he actually attacked [the nine-year-old victim] about some testimony from her in court on May 23rd 2014. So, you know, but they don't tell about any of these details until a year and a half later when he wants to use her previous testimony against her when it's convenient.* (during rebuttal closing argument)

14. [Defense counsel] said the words, "I'm not suggesting therapists or prosecutors were persuading the kids." Okay. If you're not doing that, why mention it about five to ten times? I think he did it, maybe it's an insinuation. Maybe that's the way he would like to characterize it. He did it to the girls when they were on the stand. "Oh, did you get the toys from [General Wright]? Did you get the toys from [General Wright], when you talked to him about it? Did [General Wright] tell you what to say, did Mom

tell you what to say?" *He's not going to say that the prosecutor's trying to persuade them.* Maybe it's an insinuation, maybe I'm over-thinking it.

....

*And I did, I did take offense to this.* I think I'm going to have to elaborate a little bit. He said he called a cast of characters. (during rebuttal closing argument)

15. *[The seven-year-old victim] and the bear. I don't know what to say. I don't know what to say about that. If the case crumbles because of that, then y'all put more stock in it th[a]n I would think necessary.* But that's just for y'all to decide. I think you can use your common sense here. (during rebuttal closing argument)

16. *Alicia Lipscomb [a defense witness]. I've run into Alicia before—* (during closing argument)

*See Johnathan Robert Leonard*, 2017 WL 1455093, at *4-5 (emphasis in original to mark the phrases the Petitioner contended were objectionable) (footnote omitted).

The Petitioner argued on appeal that the above comments violated his right to due process and amounted to prosecutorial misconduct. *Id.* at *5. We reviewed comment 16 under plenary review and concluded that although the comment was improper because it related to facts outside the record that were not common public knowledge, the comment was not so egregious as to constitute reversible error. *Id.* at *6. However, we determined that the Petitioner waived plenary review of comments 1, 2, and 6-15 by failing to make contemporaneous objections at trial. *Id.* We also determined that the Petitioner waived plenary review of comments 3-5 for prosecutorial misconduct because he did not challenge them as prosecutorial misconduct in the motion for new trial. *Id.*

We reviewed the remaining fifteen claims for plain error and determined that comment 1 was not improper because it was made in the context of identifying juror bias during voir dire. *Id.* at *7. We also determined that the Petitioner failed to show he did not waive the issue for tactical reasons because he stood to gain from that line of questioning. *Id.* Comments 2 and 3 were "'generic and commonplace observations by the prosecutor that it will likely be difficult for young children to testify in a case involving child rape'" and thus did not constitute error "'of such a great magnitude that it probably changed the outcome of the trial.'" *Id.* at *8 (quoting *State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000)). Comment 4 related to the prosecutor's volume when speaking, and upon the Petitioner's objection, the trial court instructed the prosecutor to lower his

voice. *Id.* Comment 5 related to the Petitioner himself, and upon objection, the prosecutor withdrew the comment and the trial court instructed the jury to disregard the remark. *Id.* We determined that comments 4 and 5 were subject to "sufficient curative measures" and that no substantial right of the Petitioner was affected. *Id.*

We determined the comments made by the prosecutor during closing and rebuttal closing argument that were challenged by the Petitioner did not rise to the level of plain error and specifically concluded that comments 6, 8, and 12 were not improper. *Id.* Regarding comment 6, we concluded that the Petitioner failed to show the comment was improper and conceded in his appellate brief that the comment alone "'would not have been prejudicial.'" *Id.* Comments 8 and 12 were made by the prosecutor in response to the Petitioner's statements that the victims' mother concocted the abuse allegations to put him in jail. *Id.* We concluded comments 8 and 12 were "fair comments based on reasonable inferences from the proof" and thus were not improper. *Id.* We also determined that the defense's closing argument cured any confusion from the prosecutor's argument to the extent the prosecutor's argument relied on facts outside of the record. *Id.* Comment 7 "reflected unfavorably on the trial tactics employed by the defense" and comments 10 and 11 "could be seen as the prosecutor expressing a personal belief in the truth of the evidence." *Id.* However, we concluded that comments 7, 10, and 11 "were not so improper that they affected the jury's verdict." *Id.* Therefore, we determined that the Petitioner failed to establish plain error and affirmed the Petitioner's convictions. *Id.* at *14. The Tennessee Supreme Court denied his application for permission to appeal.

The Petitioner filed a petition for post-conviction relief claiming that he received ineffective assistance of counsel at trial and on appeal. *Johnathan Robert Leonard*, 2019 WL 5885085, at *2. Among other claims not relevant in the present appeal, the Petitioner alleged that counsel failed to adequately meet and confer with him, preserve claims of prosecutorial misconduct for appeal, resulting in the waiver of those claims, and challenge his sentence on appeal. *Id.*

An initial post-conviction hearing was held in July 2018, in which the Petitioner testified that he was arrested in 2014 for the underlying offenses and that another attorney represented him in general sessions court. However, the Petitioner's family retained counsel who represented him beginning in circuit court and through his direct appeal. According to the Petitioner, counsel visited him twice while he was in custody. The Petitioner testified that the first visit lasted approximately ten minutes, during which counsel introduced himself to the Petitioner and asked the Petitioner to sign some documents. The second visit lasted approximately fifteen minutes during which they discussed the Petitioner's case "a little bit." The Petitioner stated that he provided the names of witnesses to counsel. At some point, the Petitioner was released on bond and

called counsel over the telephone to inform him that he had been released. The Petitioner testified that counsel met with the Petitioner twice after he bonded out, once at the Petitioner's home and once at counsel's office. Counsel spent approximately twenty-five minutes at the Petitioner's home, during which time they discussed his case "a little bit." The next meeting took place at counsel's office closer to the time of trial and lasted approximately thirty minutes. The Petitioner recalled that they met at counsel's office "[t]o go over a couple of questions that [he] may be asked and to let [him] know what [he] should wear." The Petitioner also agreed he had approximately two court dates prior to trial during which he met with counsel. On cross-examination, the Petitioner agreed counsel never refused to answer his questions.

The Petitioner agreed that he had an opportunity to review discovery with counsel. However, he later stated that he did not have an opportunity to review discovery with counsel but that he received discovery through the mail. He stated that he was not comfortable with how his case was proceeding because he "didn't really understand what was going on." The Petitioner stated that although he and counsel discussed the trial strategy and the Petitioner understood the theory of the case counsel was going to pursue at trial, the Petitioner was not confident about his case and felt that more time with counsel would have helped him. On cross-examination, the Petitioner conceded that there were other reasons he was uncomfortable during the proceedings and that it was not the sole fault of counsel he was uncomfortable. He agreed that there were not any witnesses whom counsel failed to call at trial. When asked how meeting with counsel would have affected his case, the Petitioner responded, "I'm not sure." He then stated that he would have felt more prepared for trial in that he would have "maybe at least understood what was going on." The Petitioner met with counsel again after his trial but before his sentencing hearing.

The Petitioner stated that he did not meet with counsel to discuss the issues that would be presented on appeal. According to the Petitioner, he received a letter from counsel regarding his case after his direct appeal had been denied. The letter, dated September 13, 2017, and entered as an exhibit to the hearing stated in relevant part that the Petitioner had the right to file a petition for post-conviction relief and, "**If you were to allege that I was ineffective for failing to include in your motion for new trial objections made at trial but not included in the motion I would testify that in my opinion I did provide ineffective assistance for that failure.**" (emphasis in original). On cross-examination, the Petitioner stated that he could only recall counsel making one objection during the trial.

Counsel testified that he represented the Petitioner through his trial and on appeal. He stated that he had represented clients in hundreds of jury trials before the Petitioner's case and that sixty to seventy percent of his cases involve sexual offenses. According to

counsel, he met with the Petitioner in person at least five times but felt "there were probably at least several more" meetings. He stated that he had an "open phone policy" with his clients, pursuant to which he would return telephone calls or text messages within twenty-four hours. He believed he had "several, if not many, conversations with [the Petitioner] over the telephone" but he did not recall how many of those conversations consisted of substantive conversations about his case. He agreed that he met with the Petitioner a sufficient length of time to develop a theory for the case and a trial strategy.

Counsel stated that he did not raise grounds for relief on direct appeal challenging the Petitioner's sentence or the sufficiency of the evidence because he "did not feel that they were viable issues" and that "neither one had really a snowball's chance of success." On cross-examination, he elaborated that he often avoids making arguments that lack viability because the "viable issues kind of get lost and maybe paid less attention to and it is a better practice to focus on . . . your viable issues." He believed he presented the viable issues from the Petitioner's case on appeal.

Regarding the letter he sent to the Petitioner, counsel testified that he believed he was ineffective for failing to preserve objections by omitting them from the motion for new trial. He stated that there were "a few objections" he should have made but failed to make. However, he believed the "bulk of the failure was . . . due to the failure to include them in the motion for new trial." He stated that he did not raise the objections in the motion for new trial because he had forgotten about them in preparing the motion for new trial but remembered them on appeal when he had used the trial transcript to prepare for the appeal. He stated that he argued plain error for the objections he failed to preserve in the motion for new trial. On cross-examination, he did not recall whether the reviewing court reviewed the claims for plain error, but he believed "[they] would have had a better chance and different outcome if [he] had raised his objections timely."

Following a hearing, the post-conviction court granted the petition on the basis that counsel was ineffective by failing to appeal the Petitioner's sentence, and the post-conviction court granted him a delayed appeal. *Johnathan Robert Leonard*, 2019 WL 5885085, at *2. The Petitioner filed the delayed appeal challenging his sentence. *Id.* at *4. This court reversed the post-conviction court's decision because we concluded the Petitioner failed to establish that counsel was ineffective and that the post-conviction court erred in granting the Petitioner a delayed appeal. *Id.* at *9. However, because the post-conviction court failed to stay the proceedings and declined to rule on the Petitioner's remaining allegations of ineffective assistance of counsel, we remanded the case for further proceedings regarding the remaining allegations that went unaddressed. *Id.*

On remand, the post-conviction court held a second evidentiary hearing to review the remaining allegations because the judge who presided over the first post-conviction hearing had retired. The Petitioner's testimony regarding the number of meetings with counsel was consistent with his testimony at the initial post-conviction hearing. The Petitioner also testified that during a meeting while he was incarcerated, counsel visited for approximately ten or fifteen minutes in which they talked about his case "[f]airly but not in depth." He stated that the meeting at counsel's office "didn't really last very long" but was related to preparing for trial which "was mainly what [he] was to wear and stuff like that." The Petitioner stated that at the meeting at the Petitioner's home, they "talked a little bit about the case but not necessarily . . . in depth on what was going to happen or anything." He recalled counsel asking if he wanted to testify, to which the Petitioner responded, "if I needed to and it was in my best interest." The Petitioner maintained that counsel did not review what his testimony would have been or practice testifying with him.

The Petitioner estimated that he met with counsel approximately four times in total but said he did not understand the trial strategy or defense theory. The Petitioner elaborated that he knew counsel's theory was that the victims' mother was vindictive and had a motive to accuse him of the crimes. He stated that he informed counsel about witnesses who observed the victims' mother's "outburst and everything." He stated that the defense could have developed more details about the victims' mother, including that there was a prior situation in which she called the police, had him arrested, and then recanted her accusation. He stated that he and counsel could not have discussed those details in the time they met.

The Petitioner recalled also meeting with counsel at approximately two or three court dates before trial, but he stated that they only discussed what happened in court on the respective dates. The Petitioner believed that if counsel had met with him more, the Petitioner would have been more comfortable and would have had a better understanding of the proceedings. He believed that more meeting time with counsel would have given the defense a better opportunity to prepare and "potentially [obtain] a different outcome." He also believed that more interactions with counsel could have resulted in "a witness" being called at trial who observed the victim's mother's "outbursts . . . which pretty much provoked the whole argument [they] had on [the day she reported the Petitioner to police.]" On cross-examination, the Petitioner denied providing the names of witnesses to counsel and said that counsel obtained that information from his mother and sister. The Petitioner recalled counsel previously testifying that counsel's clients have "an open [tele]phone line" to counsel, but the Petitioner agreed he never called counsel to discuss his case other than to let counsel know he had posted bond. He said that he was provided discovery but that it was "partial" in the sense that "[a] lot of things that [were] listed in there, [he] wasn't given."

The Petitioner did not understand why counsel failed to object to certain statements made by the prosecutor. On cross-examination, he agreed that counsel challenged some instances of prosecutorial misconduct in the motion for new trial. The Petitioner stated that one of his "biggest complaints" was that counsel stopped objecting at trial. He stated that he never met with counsel after trial to discuss the motion for new trial and that the Petitioner would have expressed his concern about the prosecutor's comments if they had met. He stated that he never met with counsel prior to the appeal being filed, and counsel sent the Petitioner "a copy of it."

Counsel characterized the Petitioner's recollection of the number of meetings they had as "fairly accurate" but believed there might have been a few more meetings the Petitioner failed to recall. He stated that the defense strategy was to attack the victims' mother's credibility and highlight her motives to fabricate the allegations she made.

Counsel stated that the trial was "a knock-down, drag-out" that was "hard fought on both sides." He recalled feeling like "we left nothing on the table other than what we missed with the objections in the [motion for] new trial." He stated that he made a strategic decision to limit objections during the trial in an effort to avoid alienating the jury by being overruled too much because the trial judge did not "hide his displeasure if he felt an objection was not worthy." Counsel said that he was "probably surprised" by some of the comments made by the prosecutor in the Petitioner's trial. He agreed that failing to object to some of the statements would affect the Petitioner's ability to appeal but decided to focus on winning the trial because "the odds of getting reversed are minimal." Counsel stated that he relied on his memory and notes to prepare the motion. After the motion for new trial was filed, he found additional instances of prosecutorial misconduct or objections made that he included as claims on appeal. He confirmed that the letter received by the Petitioner appeared to be the letter he sent. He stated that he bolded part of the letter "because it was an error in the case and it needed to be addressed and considered." He stated that the bolded text referred to objections made at trial but not raised as issues in the motion for new trial. He could not recall the exact objections but stated that they primarily related to prosecutorial misconduct. He agreed that he did not object at trial to certain statements for strategic reasons but conceded that there was no strategic reason for not raising issues relating to the objections he did make in the motion for new trial. He believed the improper comments would be considered harmless by a reviewing court.

The post-conviction court found that counsel adequately met and conferred with the Petitioner because they met multiple times during the representation, during which they discussed discovery, developed a defense theory centered on showing the victims' mother was being vindictive against him by falsely accusing him of the crimes, and identifying witnesses that would be called on the Petitioner's behalf at trial to support the

defense's theory. The court noted that the Petitioner testified he met with counsel several times, including twice while in custody, twice once released from custody, and "spoke up to five additional times when the [Petitioner] had court appearances." The court also noted that the Petitioner identified one meeting at counsel's office during which they prepared for trial. The court credited counsel's testimony that he believed "a 'few more meetings' may have occurred." The court also observed that the Petitioner admitted he knew he could call counsel about his case but failed to call him to discuss the case. The court noted that the trial evidence against the Petitioner consisted of lay witness testimony from the victims and the victims' mother rather than expert witness testimony regarding physical evidence and found that counsel's time spent preparing for trial with the Petitioner was sufficient in light of the evidence presented at trial. The court found that the Petitioner failed to identify any questions left unanswered from counsel's representation. The court found that the Petitioner failed to establish prejudice because he presented no evidence showing how the outcome would have been different had counsel met with him more. The court also found that the Petitioner failed to show prejudice related to his ability to call witnesses at trial because he failed to call any of the witnesses at the post-conviction hearing.

Regarding the Petitioner's claim that counsel failed to preserve claims of prosecutorial misconduct, the court found that the objectionable statements referenced in the post-conviction petition were the sixteen comments raised as claims on direct appeal. The court observed that fifteen of the sixteen comments were reviewed for plain error because they had not been properly preserved for appeal and that only one was subjected to plenary review. The court credited counsel's testimony that he stopped objecting to certain comments to preserve credibility with the jury, and it found counsel's decision to be a reasonable trial strategy. Although the court noted that counsel did not preserve the fifteen claims for plenary review, the court found that the Petitioner failed to show that any of the comments were improper or "would have or could have swayed the jury." The court found that a reviewing court would have concluded that the comments were harmless, and the post-conviction court found that the Petitioner, therefore, failed to show a reasonable probability that he would have been granted relief under plenary review. The post-conviction court denied the Petitioner's petition, and the Petitioner appeals.

## ANALYSIS

The Petitioner contends that counsel was ineffective because he failed to adequately meet and confer and failed to preserve claims of prosecutorial misconduct. The State responds that the Petitioner failed to show counsel was ineffective. We agree with the State.

A petitioner may request post-conviction relief by asserting grounds alleging that his conviction or sentence is void or voidable because it abridged his constitutional rights provided by the Tennessee or the United States Constitutions. T.C.A. § 40-30-103. To obtain post-conviction relief, a petitioner must prove the allegations of fact made in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "[Q]uestions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001) (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)). Additionally, appellate courts may not "substitute their own inferences for those drawn by the trial court." *Id.* (citing *Henley*, 960 S.W.2d at 579). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (citations omitted).

A criminal defendant has a right to the assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to assistance of counsel inherently guarantees that counsel's assistance is "effective." *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). To prove that counsel was ineffective, a petitioner must show that (1) counsel performed deficiently and (2) such deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88.

To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This standard requires a petitioner to demonstrate that the "services rendered or the advice given" were "'below the range of competence demanded of attorneys in criminal cases.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Counsel must have made errors so serious that counsel was not functioning as the "'counsel'" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Measuring counsel's performance requires giving deference to counsel's decisions, and courts must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 669. Accordingly, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight,

to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland* 466 U.S. at 689).

"[D]eference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Adequate preparation includes counsel's "duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691).

To demonstrate that a counsel's deficient performance prejudiced the defense, a petitioner must prove "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Dellinger*, 279 S.W.3d at 294 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because a petitioner must establish both deficiency and prejudice to prove ineffective assistance of counsel, a court need not address both prongs where the petitioner has failed to establish one of them. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The Petitioner has failed to show that counsel was deficient by failing to adequately meet and confer with him. The post-conviction court found that counsel met with the Petitioner on several occasions during which they discussed the Petitioner's case, discovery, the theory of the case, and possible witnesses the defense would call at trial. The post-conviction court noted that the jury's assessment of the witnesses' credibility was an important factor in the Petitioner's convictions because the case generally lacked physical evidence pointing toward the Petitioner's guilt, and it found the amount of time counsel spent with the Petitioner sufficient in light of the evidence involved in the case. The court observed that the Petitioner conceded meeting with counsel twice while in custody and twice when he bonded out and that he was aware the defense theory centered on challenging the victims' mother's credibility. The court also found that counsel met with the Petitioner up to five additional times, and the court credited counsel's testimony that more meetings occurred than the Petitioner recalled. The court observed that the Petitioner conceded knowing he could contact counsel by telephone to discuss his case but failed to do so except for one occasion on which he informed counsel he bonded out of jail. The evidence does not preponderate against the court's findings. *Ward*, 315 S.W.3d at 465.

The Petitioner relatedly alleged that counsel's failure to meet and confer with him prevented him from calling additional witnesses at trial to provide testimony about the victims' mother. However, the Petitioner did not present these witnesses at the post-

conviction hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Although the Petitioner testified that more time with counsel would have made him more comfortable, he has not shown how that additional comfort could have led to a different result at trial. Thus, the Petitioner has failed to establish any prejudice from counsel's alleged failure to adequately meet and confer with him.

Turning to the Petitioner's allegation regarding counsel's failure to preserve claims of prosecutorial misconduct, we note that his allegation relates to the same comments upon which he relied on direct appeal. The Petitioner alleges that he would have received plenary review instead of plain error review on appeal if counsel had preserved the issues. However, the Petitioner has not established prejudice. As we discussed above, this court reviewed fifteen of the sixteen comments for plain error rather than under plenary review because those claims were waived. *See Johnathan Robert Leonard*, 2017 WL 1455093, at *6. However, in conducting plain error review, we nonetheless concluded that most of the comments were not improper; that two of the comments were subject of "sufficient curative measures" by the trial court, which granted the Petitioner his requested relief; and that the comments that were improper "were not so improper that they affected the jury's verdict." *Id.* at *7-8. Accordingly, the Petitioner has not shown a reasonable probability that the outcome would have been different had counsel objected to the comments or preserved them as issues for his appeal.

To the extent the Petitioner attempts to challenge counsel's failure to object to certain comments not addressed on direct appeal, the Petitioner failed to question counsel about the specific comments to which he did not object. "'The decisions of a trial attorney as to whether to object to opposing counsel's arguments are often primarily tactical decisions.'" *Richard Lloyd Odom v. State*, No. W2015-01742-CCA-R3-PD, 2017 WL 4764908, at *36 (Tenn. Crim. App. Oct. 20, 2017) (quoting *Derek T. Payne v. State*, No. W2008-02784-CCA-R3-PC, 2010 WL 161493, at *15 (Tenn. Crim. App. Jan. 15, 2010)). "Accordingly, trial counsel must be given the opportunity to explain why they did not object to the allegedly prejudicial remarks." *Richard Lloyd Odom*, 2017 WL 4764908, at *36. "'Without testimony from trial counsel or some evidence indicating that [their] decision was not a tactical one, we cannot determine that trial counsel provided anything other than effective assistance of counsel.'" *Id.* (quoting *State v. Leroy Sexton*, No. M2004-03076-CCA-R3-CD, 2007 WL 92352, at *5 (Tenn. Crim. App. Jan. 12, 2007)). The Petitioner has not carried his burden of proof to show that counsel was deficient in failing to object or that any failure to object prejudiced his defense. Therefore, the Petitioner is not entitled to relief.

**CONCLUSION**

Based on the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE